# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ANDREW WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-CV-114-AGF |
| ) | |
| BETTYE BATTLE-TURNER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Andrew Walker for leave to commence this action without payment of the required filing fee [Doc. #2]. Upon consideration of plaintiff's financial information, the Court finds that he is unable to pay the filing fee, and therefore, the motion will be granted. Furthermore, for the reasons set forth below, the Court will dismiss this action pursuant to 28 U.S.C. ' 1915(e)(2)(B).

## 28 U.S.C. ' 1915(e)

Title 28 U.S.C. ' 1915(e)(2)(B) provides that the Court may dismiss a complaint filed in forma pauperis at any time if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if Ait

lacks an arguable basis in either law or in fact.@ *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead Aenough facts to state a claim to relief that is plausible on its face.@ *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 51-52.

When reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

**The Second Amended Complaint**

Plaintiff seeks monetary relief in this action brought pursuant to 42 U.S.C. § 1983 for the violation of his Fourth and Fourteenth Amendment rights. The named defendants are St. Louis Metropolitan Police Department Board of Police Commissioners Bettye Battle-Turner, Francis G. Slay, Thomas Irwin, and Richard Grey; City of St. Louis police officers Daniel Isom, Keith Shelton, Andre Spear, Donna Garrett, and Gregory Findley; the State of Missouri; and the City of St. Louis. Plaintiff is suing defendants Battle-Turner, Slay, Irwin, Grey, and Isom in their official capacities; he is suing defendants Shelton, Spear, Garrett, and Findley in both their individual and official capacities.

The second amended complaint consists of a twenty-four page document titled "Complaint" [Doc. #5] and fifty-one pages of attached exhibits [Doc. #5-1].[1]

---

[1] The exhibits include an Affidavit of Andrew Walker dated January 4, 2013 [Doc. #5-1, pp. 1-3]; an Affidavit of Emmitt Randal dated January 7, 2013 [Doc. #5-1, pp. 4-6]; an unsigned statement on Loughborough Auto Repair & Glass letterhead

In the "Complaint," plaintiff alleges that on August 22, 2012, he "was trying to repossess his vehicle" from Loughborough Auto Repair and Glass, LLC ("Loughborough Auto Repair") in the City of St. Louis, which is owned by Michael Weber.[2] Plaintiff further alleges that "Weber [and his agents] ran after plaintiff while he was in his vehicle, [and] battered and assaulted plaintiff in order to unlawfully take back the vehicle." Plaintiff states that at that time, he called 911 and defendant police officers Shelton and Spear "arrived at the business" and placed plaintiff under arrest "for stealing over $500, assault, and property damages despite plaintiff's lawful presences [sic] and repossession of his own vehicle at the business." Plaintiff claims that "[n]o reasonable officer could have believed that

---

concerning the events of August 22, 2012 [Doc. #5-1, pp. 10-12]; a bill from Morelli's Towing dated April 25, 2012, showing that a Jaguar owned by Andrew Walker was towed to "Loughborough A B" and that the $132 service charge was "not paid" [Doc. #5-1, p. 13]; an "Estimate of Repair Costs" from Loughborough Auto Body to Everett Randell dated August 22, 2012 [Doc. #5-1, p. 14]; a three-page Main Case Report [Doc. #5-1, pp. 17-19]; a repair bill dated May 8, 2012, for $1,807 from Loughborough Auto Repair regarding Andrew Walker's '86 Jaguar [Doc. #5-1, p. 22]; a "St. Louis Metropolitan Police Incident Report CN 12-04334" relative to the events which took place on August 22, 2012, at Loughborough Auto Repair [Doc. #5-1, pp. 27-37]; documents concerning the criminal case that was brought against plaintiff in the City of St. Louis, *State of Missouri v. Walker*, No. 1222-CR-04659 [Docs. #5-1, pp. 7-8, 15-42]; a "Notice of Bankruptcy Case Filing" in *Walker v. Weber*, No. 12-47852-399 (Bankr. E.D. Mo.) [Doc. #5-1, p. 51]; and numerous miscellaneous documents.

[2] Plaintiff does not name Michael Weber as a defendant in the second amended complaint.

4

probable cause existed to arrest [him]." In addition, plaintiff summarily claims that "[t]he facts and circumstances within the officer[s'] knowledge were not sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that plaintiff had committed, was committing or was about to commit an offense."

Additionally, plaintiff alleges that Officers Shelton and Spear prepared a false incident report, which defendant Findley knew was false, and yet approved. Plaintiff asserts that the incident report was false in that (1) the report stated plaintiff attempted to steal his own vehicle from Loughborough Auto Repair, when "in truth and fact, no event occurred at that location"; (2) Loughborough Auto Repair was not a licensed business on the date of the incident; and (3) plaintiff "was in Chapter 13 proceedings [on August 22, 2012], and informed the police at the time of the incident and in fact was not committing any crimes."[3]

Plaintiff further alleges that after his arrest, he was taken to the City of St. Louis Justice Center, where the defendant police officers knew he would be

---

[3] The Court notes that included in plaintiff's exhibits is a copy of a "Notice of Bankruptcy Case Filing" in *Walker v. Weber*, No. 12-47852-399 (Bankr. E.D. Mo.), indicating that the bankruptcy case was filed on August 15, 2012 [Doc. #5-1, p. 51], one week prior to plaintiff's attempt to repossess his Jaguar from Loughborough Auto Repair.

searched. Plaintiff claims that because he had been falsely arrested, this search and seizure was also unlawful.

In addition, plaintiff alleges that defendants Isom, Garrett, and Findley were made aware of plaintiff's false arrest, "yet failed to take appropriate disciplinary actions in a timely manner against [Shelton and Spear]," failed to immediately suspend these two officers, and failed to notify the St. Louis Metropolitan Police Department Board of Police Commissioners of the false arrest. Plaintiff asserts that the defendant Board of Police Commissioners failed to train, supervise, control, and discipline defendants Shelton, Spear, Garrett, and Findley, and that their policies and customs, particularly with regard to "prevent[ing] the truth about false arrests," caused plaintiff's constitutional deprivations. Plaintiff generally alleges a conspiracy among all defendants, and he asserts respondeat superior claims against the State of Missouri and the City of St. Louis. Plaintiff asserts that the State of Missouri prosecuted him "for the false charges and failed . . . to secure a conviction against [him]."[4] In addition to his Fourth and Fourteenth Amendment claims, plaintiff asserts pendent state-law claims for false arrest, false imprisonment, and battery.

---

[4] A copy of a memorandum of *nolle prosequia* entered on April 23, 2013, in plaintiff's underlying criminal case, reads: "The State elects not to proceed" [Doc. #5-1, p. 7].

In addition to plaintiff's express allegations set forth in the "Complaint" portion of the second amended complaint, the Court must consider the fifty-one pages of attached exhibits.[5] The exhibits indicate that plaintiff had his 1986 Jaguar XJ6 towed to Loughborough Auto Repair on April 25, 2012, to have an engine installed [Doc. #5-1, pp. 1, 13]. Although there is some dispute as to exactly what repairs plaintiff authorized Loughborough to make on the Jaguar, suffice it to say that Loughborough made certain repairs and the charges amounted to $1,807; the work was completed on May 8, 2012 [Doc. #5-1, p. 22]. The exhibits further indicate that, over the next three months, Loughborough employees said they made numerous attempts to contact plaintiff to let him know his car was ready, but each time they were told that plaintiff was in California, that he would send money to pay for the repairs, and that he would call when he returned to St. Louis [Doc. #5-1, pp.

---

[5] *See* Fed.R.Civ.P. 10(c) (a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes); *West-Anderson v. Missouri Gaming Co.*, 2014 WL 1797180 at *1 (8th Cir. 2014) (noting that a document attached as an exhibit to a pleading is part of the pleading); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (when a plaintiff attaches a document to a complaint which contains unilateral statements by a defendant that conflict with plaintiff's allegations, Rule 10(c) does not require plaintiff to adopt every word in the document as true; concluding statements in police officers' reports attached to a complaint simply constitute allegations that officers made statements in report, not that statements were true).

10-11]. There appears to be no dispute that Loughborough never received any payment from plaintiff for the repairs made to the Jaguar.

The exhibits also indicate that on August 22, 2012, plaintiff went to Loughborough Auto Repair with his cousin, Emmitt Randal, and using a spare car key, plaintiff entered the Jaguar and tried to start the car [Doc. #5-1, pp. 1-6, 10-11]. The car would not start, and plaintiff was told to return in a few hours [Doc. #5-1, pp. 1-2, 4, 11]. Plaintiff told Steve Weber, a mechanic at Loughborough Auto Repair, that he had filed for bankruptcy and "it was the law" that they give him his car [Doc. #5-1, pp. 2, 5,11]. Plaintiff was told he could not take his car until Loughborough received payment for the work performed on the vehicle, and Michael Weber, the owner of Loughborough Auto Repair, then called the police [Doc. #5-1, pp. 11]. Both Steve and Michael Weber again told plaintiff he could not take the car until the bill was paid, and plaintiff, "in fear for [his] person . . . called the police and got into [his] auto." [Doc. #5-1, pp. 2, 11]. Plaintiff got into the Jaguar and locked the doors [Doc. #5-1, pp. 2, 11]. Michael Weber placed a used car door in front of the vehicle, which was parked in an alley, to prevent plaintiff from leaving [Doc. #5-1, pp. 2, 11]. Plaintiff started the car and claims that it went "out of control" into reverse, striking two Loughborough employees. The vehicle then proceeded forward and hit a shop truck [Doc. #5-1, pp. 2, 11]. Meanwhile, Loughborough

employees had jumped on to the car and were trying to stop plaintiff from driving away without paying for the repairs. Ultimately, Michael Weber drew his firearm and told plaintiff to wait until the police arrived [Doc. #5-1, pp. 2, 12]. Officers Keith Shelton and Andre Spear responded to the incident.

Plaintiff's attached exhibits also include Officer Shelton's St. Louis Metropolitan Police Incident Report [Doc. #5-1, pp. 27-37]. The report states, "Type of Incident (Offense): 1. Assault 2nd Degree; 2. Assault 2nd Degree; 3. Theft of Property/Services $500 - $25,000 (Stealing) . . . Type of Weapon/Force Involved: Motor Vehicle (as Weapon)." The three victims were listed as Steven V. Weber, James King, and Michael Weber. The witnesses listed in the report were Steven V. Weber, Stephen Fernandez, and Daniel Griffon. The suspect/offender was listed as Andrew Walker. Walker was charged with two counts of second degree assault, theft of property/services in the amount of $1,807, and first degree property damage. Officer Shelton's "Narrative," which is partially redacted,[6] states that he and Officer Spear received a radio assignment for a "disturbance" at Loughborough. Upon arrival, he observed one of the victims, accompanied by several of his co-workers, and Andrew Walker, who was being detained by Loughborough employees. Officer Shelton recounts statements given by witnesses

---

[6] It appears that the victims' names were redacted.

Steven Weber, Sr.,[7] the two victims and witness David Griffon,[8] and witness Stephen Fernandez.[9]

---

[7] According to the police report, StevenWeber, Sr. stated that Loughborough Auto Repair had performed $1,807 of repair work on Walker's Jaguar XJ6, and although Walker repeatedly advised Weber that he would come pay for the repairs, he never did. On August 22, 2012, Walker entered the Jaguar with his spare key and tried to start the car without paying for the repair work. The car needed a new battery and would not start. Walker said he would return later in the day to pay for the battery and the repairs. When Walker returned, Weber went with him on a test drive. Walker informed Weber that he did not have the money to pay for the repair work and Loughborough would have to obtain the money through bankruptcy court. Weber told Walker he would not be able to get his car until he paid for the work. Walker refused to relinquish the car keys and entered the Jaguar, which was parked in the alley, and locked the doors. Weber yelled repeatedly for Walker to open the doors, and believing that Walker was trying to leave without paying, a car door was placed near the front tire to prevent him from leaving. Weber repeatedly yelled for Walker to turn off the car and exit. Walker suddenly placed the car in reverse, causing injury to two of the victims. Walker then placed the car in drive, and while attempting to escape, struck the rear of a company-owned vehicle that was occupied by Daniel Griffon. Weber jumped onto the roof of the Jaguar in an attempt to gain entry through the sunroof. Walker turned eastbound on Loughborough with Weber and another employee, whose name was redacted, holding onto the vehicle; the employee had a gun, pointed it at Walker, and yelled at him to stop the car. Weber was ultimately able to enter through the sunroof and place the vehicle in park. Walker exited the car and was detained.

[8] According to the police report, the statements of the two victims and David Griffon "concurred with witness Weber Sr.'s statement."

[9] According to the police report, Stephen Fernandez stated that he heard a loud disturbance and exited his office located on Loughborough. He observed several auto body shop workers yelling at someone inside a vehicle. Fernandez observed the vehicle travel north through the alley and then on to Loughborough, with several workers hanging onto the hood of the car.

The police report states that Officer Shelton "observed surveillance of the above vehicle" as it traveled down the alley and on to Loughborough "with several persons hanging from the roof." In addition, Shelton seized a copy of the $1,807 invoice bill, explaining the service work that was performed on the Jaguar. Officer Shelton ascertained that the Loughborough employee with the hand gun had a valid "Conceal and Carry" endorsement, and Shelton relinquished the handgun to Michael Weber. The report further states that Officer Shelton advised plaintiff he was under arrest and read him his Miranda rights, in response to which plaintiff said, "I told them they could get their money through bankruptcy court."

## Discussion

A warrantless arrest without probable cause violates the Fourth Amendment as applied to state actors by the Fourteenth Amendment. *Walker v. City of Pine Bluff,* 414 F.3d 989, 992 (8th Cir. 2005). A state police officer has probable cause to arrest if the facts and circumstances within his knowledge Aare sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense@ under state law. *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (quotation omitted). An officer is entitled to rely on his or her training and experience in considering the circumstances and should proceed in the manner of a reasonably

11

cautious officer. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir.1986). "'The probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* at 1389 (quoting *United States v. Wallraff,* 705 F.2d 980, 990 (8th Cir.1983)).

After carefully reviewing the second amended complaint, the Court finds that pursuant to the Supreme Court's ruling in *Iqbal*, legal conclusions, such as plaintiff's dominant claim that "[n]o reasonable officer could have believed that probable cause existed to arrest [him]," are not entitled to the assumption of truth. *See Iqbal*, 129 S.Ct. at 1950-51. The Court further finds that plaintiff has failed to plead facts that show more than the "mere possibility of misconduct" by Officers Shelton and Spear in arresting him at Loughborough Auto Repair on August 22, 2012; the pleading does not "plausibly suggest an entitlement to relief." *See id.* In other words, even after considering alternative explanations for the defendant police officers' alleged misconduct in arresting plaintiff on August 22, the Court, in the exercise of its judgment, finds that plaintiff's conclusion that he was arrested without probable cause is not the most plausible, and it is more likely that no police misconduct occurred. *See id.*[10] More specifically, the second amended complaint

---

[10] Plaintiff may believe that, because he had filed for Chapter 13 bankruptcy a week earlier, he was entitled to use his spare car key and unilaterally attempt to "repossess" his Jaguar from Loughborough Auto Repair on August 22, 2012, despite

states that plaintiff had his 1986 Jaguar towed to Loughborough Auto Repair for repairs in April 2012. Loughborough made certain repairs that amounted to $1,807. Plaintiff did not pay for the repairs. Plaintiff filed for bankruptcy on August 15, 2012. On August 22, 2012, plaintiff "tr[ied] to repossess his vehicle" and told Loughborough employees they could get their money through bankruptcy court. Plaintiff used a spare key to enter the Jaguar, at which time Loughborough employees ran after plaintiff and attempted to prevent him from taking the vehicle without paying for the repairs. Emergency 911 calls were made, to which Officers Shelton and Spear responded. The officers took statements from victims and witnesses, viewed a surveillance video tape, and then arrested plaintiff. Plaintiff's conclusion that he was arrested without probable cause simply is not the most plausible, and it is more likely that no police misconduct occurred.

The Court further finds no merit to plaintiff's claims that Shelton and Spear prepared a false police report to cover up the allegedly unlawful arrest. As previously stated, plaintiff maintains that the report was false in three respects: (1) Loughborough Auto Repair was not a licensed business on the date of the incident; (2) "in truth and fact, no event occurred at that location"; and (3) he had filed for Chapter 13 bankruptcy a week earlier. The second ground is without merit,

---

an outstanding $1,807 repair bill; however, there is no indication that the Bankruptcy Court had issued any such order.

because plaintiff's own allegations are that an altercation occurred when he attempted to repossess his vehicle from Loughborough Auto Repair. Whether some of the events "technically" occurred in the street or in an alley, off of the actual Loughborough premises, as plaintiff attempted to drive the Jaguar away, is of no consequence here. The first and third grounds are meritless, because whether or not Loughborough Auto Repair was a licensed business on August 22, 2012, and whether or not plaintiff "was in Chapter 13 proceedings and informed the police at the time of the incident" are irrelevant to the issues surrounding his arrest.[11]

Because plaintiff has failed to state a plausible claim for false arrest against Officers Shelton and Spear, his consequential claims against the remaining defendants for illegal search and seizure, failure to train, supervise, and discipline, illegal criminal prosecution, conspiracy, and respondeat superior are also legally frivolous and will be dismissed pursuant to § 1915(e)(2)(B).

As additional grounds for dismissing this action, the Court notes that plaintiff's claims against the City of St. Louis and the State of Missouri are legally frivolous. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63 (1989) (a State is absolutely immune from liability under § 1983); *Monell v. Department of*

---

[11] *See* n. 7, *supra*.

*Social Services*, 436 U.S. 658, 691 (1978) (a municipality cannot be held liable under a respondeat superior theory).

Last, because plaintiff's federal claims will be dismissed, all remaining pendent state claims will be dismissed, as well. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a matter of discretion).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff=s motion for leave to proceed in forma pauperis [Doc. #2] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue in this case, because the second amended complaint is legally frivolous and fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #6] is **DENIED** as moot.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 11th day of June, 2014.

                         *Audrey G. Fleissig*
                         **UNITED STATES DISTRICT JUDGE**